In re Stanley Mark COHEN, Debtor.

Gary A. PLOTKIN, Chapter
7 Trustee, Plaintiff,

v.

POMONA VALLEY IMPORTS, INC.,
dba Metro Motors, Defendant.

And Related Cross–Complaint.

Bankruptcy No. LA 91–92813 KL.
Adv. No. LA 93–04283 KL.

United States Bankruptcy Court,
C.D. California.

Dec. 15, 1994.

Barry S. Glaser, Burke, Williams & Sorensen, Los Angeles, CA, for Gary A. Plotkin, Chapter 7 Trustee.

Gregory M. Salvato, Parker, Milliken, Clark, O'Hara & Samuelian, Los Angeles, CA, for Pomona Valley Imports, Inc., dba Metro Motors.

MEMORANDUM ON MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION OF ISSUES AND ORDER THEREON

KATHLEEN T. LAX, Bankruptcy Judge.

Gary Plotkin, Chapter 7 trustee (the "Trustee") in the bankruptcy case of Stanley Mark Cohen ("Debtor") filed an adversary proceeding against Pomona Valley Imports, Inc. dba Metro Motors ("Pomona") seeking to avoid various purchases of new automobiles by the Debtor on the grounds that such purchases constituted fraudulent transfers under 11 U.S.C. § 548 or California Civil Code § 3439.04 and § 3439.05. Pomona moves for summary judgment or, in the alternative, summary adjudication of issues on numerous grounds more fully discussed below.

This dispute arises out of the activities of the Debtor in a "ponzi" scheme, the basic facts of which are not in dispute. In 1989 and 1990, the Debtor received money from various individuals to purchase luxury automobiles at below-market prices. The Debtor bought the cars from dealers at full retail price, using money from new "buyers/inves-

tors" to make up the difference between the money previously received and the retail cost of the vehicles. At the time of purchase, the car was registered in the name of the buyer/investor for whom the car was purchased and was ultimately delivered to the buyer/investor (the "Recipient"). At some point, of course, the scheme collapsed because the Debtor was paying out more than he was taking in and monies from the later buyer/investors were insufficient to purchase the promised automobiles from dealers. Apparently, the Debtor is now in prison for criminal fraud in connection with this scheme.

An involuntary petition was filed against the Debtor on September 26, 1991. In this adversary proceeding, the Trustee seeks to recover the difference between the amount the Debtor received from each individual Recipient and the amount the Debtor paid to Pomona on the grounds that the Debtor had actual intent to hinder, delay, and defraud creditors pursuant to his scheme and the Debtor did not receive reasonably equivalent value because the automobiles were transferred to the third party Recipients resulting in a net depletion of money in the estate.

Viewing the scheme as a whole and the purchase and transfer of each vehicle to a Recipient who paid the Debtor less than what the Debtor paid for the vehicle, it is apparent that fraudulent transfers occurred within the meaning of Section 548 of the Bankruptcy Code and California Civil Code § 3439. However, after considering the arguments of both parties, including the supplemental issues briefed at the request of the court, this court concludes that the transfers which proved to be fraudulent were not the payments made to Pomona in exchange for vehicles at their respective retail prices.

### DISCUSSION

■ Although the parties hereto dispute a number of issues potentially relevant to the outcome of this proceeding, the threshold issue is whether the Debtor received value from Pomona equal to the money paid to Pomona. If so, no fraudulent transfer of assets of the Debtor to Pomona took place.

Pomona is in the commercial business of selling cars to buyers with the resources to pay for such cars. It is undisputed that the Debtor paid the full retail price for each car at issue. In exchange, the Debtor received either the right to own the vehicle if purchased for his own account or the right to direct disposition of the vehicle if purchased for the benefit of another. In either case, in consideration for the price paid, the Debtor received rights in the vehicle equal to the rights in the vehicle relinquished by Pomona. Such rights included the right to transfer it to another for less than what the Debtor paid for it.

■ The fact that the Debtor instructed the dealer to carry out the intent to transfer the car to another person is immaterial to the basic economics of the sale to the Debtor. Until the Debtor paid the purchase price and acquired constructive dominion and control over the vehicle either as a principal or as an agent for a Recipient, he had no right to take the vehicle in his own name or to direct that it be registered to or delivered to someone else. If the Debtor had transferred ownership of the cars into his own name and then transferred them to the Recipients, there would be no question that Pomona had given fair value to the Debtor and ultimately to the bankruptcy estate in exchange for the purchase price. The Trustee cannot skip over or ignore the fact that the transfer of the vehicles to the Recipients could only take place once the Debtor had acquired sufficient rights in the vehicles to direct their registration and delivery. Pomona's compliance with the Debtor's directions in this regard are consistent with its duties under state law to complete the documentation necessary to transfer registered ownership of the inventory it sells. The Debtor received what he paid for: rights in the vehicle, including the right to direct its delivery and registration.

This court's conclusion that the undisputed facts of this case do not support a cause of action for fraudulent transfer under federal or state law mandates that Pomona's motion for summary judgement be granted. This conclusion is further elucidated by examining other arguments proffered by the Trustee.

The Trustee has offered no evidence that Pomona or its salesman knew or had reason

to know that the sales were part of a scheme which ultimately resulted in damage to Cohen's creditors. Nevertheless, the Trustee argues that the dealer should have known that something was "amiss" because Cohen purchased more than one vehicle and that a credit check would have revealed a prior bankruptcy by Cohen.

It is not clear when, in the course of Pomona's dealings with Cohen, the Trustee believes Pomona should have done something or what action the Trustee believes Pomona could have or should have taken. At what point should a seller of retail goods decide that a buyer with the demonstrated means to pay full value has purchased too many items and, therefore, may be defrauding his or her creditors? What kind of investigation of the transaction would provide the seller with useful or actionable information? Should Pomona have required proof that registered owners in prior, completed transactions had paid Cohen at least as much or more than Cohen paid for the car? Would a Recipient be likely to volunteer such information? Since Cohen told Pomona's sales representative that the purchases were on behalf of a group of entertainment figures, including his wife's company, and were gifts and bonuses, should Pomona have made some kind of independent investigation of the financial posture of Cohen or his wife's company to ascertain if either or both would be rendered insolvent by the latest contemplated sale?

Is the Trustee arguing that retail sellers should run a credit check on all cash purchasers? What purpose would be served in doing so? Even if Pomona had discovered that Cohen had filed bankruptcy in the past, this information would not constitute notice that Cohen was engaged in a scheme that would lead him into bankruptcy a second time.

█ If a retail seller of goods refuses to sell such goods when offered its full selling price, it is not only unlikely to stay in business long, but may also find itself the object of a lawsuit, having made an offer to sell which is accepted by a willing and able buyer. The seller does not have a duty to investigate the bona fides of a cash purchaser who consents to pay the asking price for goods for sale on the open market. To impose such a duty would create an unfair and impossible burden on ordinary commercial activity. In this case, the Trustee's suggestion that Pomona shares responsibility for Cohen's actions in defrauding creditors is unsupported by any facts in evidence.

The Trustee further argues that he has stated a cause of action for unjust enrichment that should be preserved for trial. However, the only "facts" that the Trustee offers are that Pomona sold several vehicles to Cohen and that Pomona made more money than it would have if Pomona had negotiated a lower price for each vehicle. There is no cause of action for unjust enrichment here.

There is no requirement in law or equity for a retail seller of luxury goods in an open market to sell its product for less than the price it wishes to receive, much less bargain with itself to lower the price. Nor does such a seller have to prove the fairness of the price by demonstrating that other buyers would be willing to pay at least as much the successful buyer, although Pomona has offered testimonial evidence from its fleet manager at the time to prove this point. If the seller cannot obtain the price it wants, it can choose to hold the goods hoping for a better market.

If, on the other hand, the seller sets a price for its goods and a ready, willing, and able buyer offers to pay the asking price, the fact that the price falls at the high end of fair market value for the goods does not result in unjust enrichment to the sellers.

### CONCLUSION

Based on the foregoing, the motion for summary judgment should be granted.

IT IS SO ORDERED.